### LEONARD R. CUTTER *vs.* HENRY F. HOWE & others.

Suffolk. March 15. — May 22, 1877. ENDICOTT & SOULE, JJ., absent.

A charge by an officer for a "keeper" of attached personal property for several weeks on the defendant's premises, and for "custody" of the same, cannot legally . be included in the taxable costs of an action; and evidence of a practice long continued, "to tax the same fees for like services," is immaterial.

APPEAL by the defendants from the taxation of costs by the clerk of the Superior Court, in an action of contract.

The writ was dated December 22, 1874, and was returnable on the first Tuesday of January, 1875, and directed the officer "to attach the goods or estate of Henry F. Howe, Charlotte Howe and Charlotte A. Lyman, all of Boston," "to the value of five hundred dollars."

The officer's return upon the writ was as follows: "December 22, 1874. By virtue hereof I attached certain goods and chattels at No. 7 Bulfinch Place as the property of the within named Charlotte Howe and Charlotte A. Lyman, and left at the last and usual place of abode of each a summons for their appear-

ance at court. On the same day I attached certain goods and chattels at 58 Green Street as the property of the within named Henry F. Howe, and left at his last and usual place of abode a summons for his appearance at court. Service and travel, 4.98. Keeper, (each place,) 75.00. Custody and oath, 30.00. Horse and carriage, .72. $110.70." Annexed to the return was the certificate of the officer, under oath, that the expenses taxed in the return had been incurred and were reasonable.

On June 29, 1876, the officer, by leave of court, amended his return by adding : "Keepers 15 days in house, $45.00. Custody in house 15 days, $15.00. Keeper 1 day in store, $3.00. Custody in store one day, $1.00. And he says that said fees actually accrued after the return of this writ to court, and that the same are just and reasonable."

The clerk allowed costs to the plaintiff for "service, $174.70," being the aggregate of the above sums. The defendants objected to the allowance for "keeper's fees and custody," and appealed from this taxation.

At the hearing, on appeal, the plaintiff offered to prove, and the defendants admitted, that it had been the "practice in the office of the sheriff of Suffolk for more than thirty years to tax the same fees for like services as those taxed in this case, and that said fees were reasonable. The Superior Court affirmed the taxation of costs ; and the defendants appealed to this court.

*C. R. Train*, for the defendants.

*A. E. Pillsbury*, for the plaintiff.

LORD, J. The fees to which sheriffs and their deputies are entitled for service of processes are fixed by law. Gen. Sts. c. 157, § 4, as amended by St. 1865, c. 101. By the St. of 1865, c. 101, the fees of sheriffs and their deputies are raised substantially one hundred per cent. above the previously established rates. It provides that the fee shall be "for the service of a *capias*, or of an attachment with summons, fifty cents for each defendant on whom it is served ; and if the officer, by the direction of the plaintiff or his attorney, makes a special service of such writ, either by attaching personal property or arresting the body, he shall be entitled to one dollar for each defendant on whom the writ is so served." It further provides "for travel in the service of all original writs," &c., "four cents a mile each

way, from the place of service to the court or place of return; and, if the same precept is served on more than one person, the travel shall be computed from the most remote place of service, with such further travel as was necessary in serving it." The St. of 1864, c. 274, provides that "whenever it shall be necessary for any officer, in the service of civil process, to use a horse and carriage, he shall be allowed therefor twelve cents a mile, to be computed one way : provided, that unless the distance for which such conveyance is actually and necessarily used exceeds two miles one way, there shall be no allowance therefor."

In this case, the parties are all described as of Boston, and the attachments are alleged to have been made, one at 58 Green Street and the other at 7 Bulfinch Place ; and inasmuch as no claim is made that the charges for service, travel and carriage are illegal, the provisions are cited for the purpose of showing that the law has a fixed and definite fee for the duties performed by an officer in the service of processes of this kind ; and that such fee is fixed by law, and is not the subject of contract, so far as concerns the taxation of costs. The question for us to decide is what fees are subject to be taxed as costs.

The specific items objected to are "keeper" and "custody." The former of these words has been long known to the profession in all parts of the Commonwealth, and has a well understood meaning; the latter is of more recent use, and perhaps is to a considerable extent of local use, and its meaning not so well understood. So far as we can learn from the facts before us, it is, in this case, probably used to denote the responsibility which the officer is under, when he puts a keeper over property at the price of three dollars per day, which responsibility is charged at the rate of one dollar per day for the officer.

Are these charges, or is either of them, a legal fee which may be included in costs to be taxed ? We think not. It may be convenient and even necessary for an officer, who is directed to make attachment of personal property consisting of a large number of chattels, temporarily to put them in charge of a keeper, while he is making the necessary arrangements to take them into his immediate possession and control, and the question is not raised here whether the expense of such charge and keeping is incidental to the service and properly taxable as a part of the

costs. We cannot however doubt that the keeping of property in the building of the defendant by means of a keeper, without the consent of the defendant, is a violation of duty, which makes the officer a trespasser *ab initio*. We say, "without the consent of the defendant;" but the consent of the debtor does not allow the officer to charge a fee, to become a part of the taxable costs of an action, while it may relieve him from liability as a trespasser to the party consenting.

The attachment by an officer of personal property contemplates the immediate taking and keeping possession of the same by him, and retaining the custody and possession in order to enable him to seize the same upon any execution, which may issue in favor of the plaintiff, in the suit in which the attachment is made. This rule has been recognized by a long series of decisions in this Commonwealth, and in the various sections of the statutes upon the subject. Gen. Sts. *c.* 123, §§ 32, 42, 46. Section 57 of the same chapter makes provision for the case in which such possession cannot be taken. It is as follows: "When an attachment is made of articles of personal estate which, by reason of their bulk or other cause, cannot be immediately removed, a certified copy of the writ, (without the declaration,) and of the return of the attachment may, at any time within three days thereafter, be deposited in the office of the clerk of the city or town in which it is made; and such attachment shall be equally valid and effectual as if the articles had been retained in the possession and custody of the officer."

Does the consent of the debtor, or even his agreement to pay the expenses of the keeper, make those expenses a subject to be included in the taxation of costs? To this we answer, "No." The costs which can be taxed by the plaintiff against the defendant are only such costs as the officer has a legal right to demand of the plaintiff and to compel the plaintiff to pay to him; and no agreement between the officer and the defendant can create a cause of action by the officer against the plaintiff. The plaintiff delivers his writ to the officer with instructions to make an attachment. The officer is bound by law to make the attachment according to law; and the plaintiff is bound to pay the officer the fees for such service as fixed by law; and any agreement between the officer and the defendant cannot make the plaintiff

liable for any other than the fees which the law· has fixed for such service. If, as matter of contract, the defendant chooses for his own benefit to pay a keeper, and the officer is willing to assume the responsibility of such a contract, we say only, without intimating whether such a contract would or would not be valid in law, that any payment on such a contract would not be a part of the taxable costs which the plaintiff must advance to the officer to be repaid by the defendant to him. The same rule would apply, if the plaintiff directed the officer to employ a keeper, instead of taking possession of and removing the goods ; nor could the plaintiff and officer agree to such mode of preserving the attachment, and make the expense of it a part of the taxable costs. The plaintiff can recover only the fee which by law he is bound to pay the officer for making the attachment according.to law and no agreement between him and the officer can enlarge the amount which the law fixes as the fee for service. If plaintiff, defendant and officer all agree to a service different from and for a compensation other than that which the law fixes, such agreed compensation, whether or not it is one which may be enforced at law between the parties, could not be made a part of the taxable costs; for this obvious reason, among others, that if any misunderstanding should arise between them there is no mode of ascertaining their respective rights upon the taxation of the costs of suit. These remarks, of course, are not intended to apply to agreements, made by parties to the cause and. in the course of proceeding, as to the sum for which judgment should be rendered, either for debt or costs ; but only to those cases in which the question is what are the legally taxable costs in the suit.

Assuming that it is the right of the officer, upon the attachment of personal property, to put it in charge of a keeper for a reasonable time before removing it and taking it into his own possession and custody, is there anything in this officer's return, allowing to it the greatest latitude of construction, which makes a *primâ facie* case that the charge is a proper one? By his precept he is directed to attach property to the value of five hundred dollars. It is to be assumed that the property was not incapable of immediate removal by reason of its bulk or otherwise · for then it would have been the duty of the officer to retain his

custody by leaving a copy of his writ (without the declaration) with the clerk of the city. The precise question which is to be decided is this: Is the charge by the officer of the sum of $174.70 for serving the writ a legal charge?

Inasmuch as no evidence material to be considered was offered, except the return itself, does the return of the officer show a legal taxable fee to that amount? We say "no evidence material to be considered," because the only evidence is that of "the practice in the office of the sheriff of Suffolk, for more than thirty years, to tax the same fees for like services." The practice to charge fees not in law taxable has been in several cases passed upon by this court; and it has in every case been held to be inadmissible evidence.

The question then recurs, does the return of the officer show a fee for service which he had the right to make? It does not appear by the return what the goods and chattels in either place were, nor the character nor the value of them. Whether, as between the officer and the plaintiff, the return shows that they were of the value of five hundred dollars, or whether, as between the officer and the respective defendants, the return shows them to be merely of nominal value, it is not necessary to inquire. The description of the property attached is referred to only for the purpose of ascertaining whether, upon the full return of the officer, the fee charged is a legal one. Nor does the return state where the keeper was placed, nor in fact that there was any keeper appointed, except by implication in the charge "keeper in each place," in one return, and the charge of "keeper," in the supplemental return, "in house" and "in store." The reasonable and proper construction of this is, that the house was the dwelling of the female defendants; and the store was the shop or place of business of the male defendant.

Assuming, as most favorable to the claim of the officer, that an attachment was made in all to the amount of five hundred dollars, the question still recurs, may an officer keep such an amount of property under the care of a keeper till the expenses of the keeper, with custody by the officer, reach the sum of one hundred and sixty-four dollars? Assuming, what the case does not show, that the mode of keeping was without objection by the defendants, or even at their request, it still remains to decide

whether such expense is a proper charge in the service of the writ. As already intimated, the question is not whether the officer is a trespasser, nor whether a valid contract may be made between the officer and the defendant, by which extraordinary expenses may be recovered in an action by the officer against the defendant for the expenses incurred by request of the defendant; but it is rather this: Can a contract, or any arrangement, be thus made which shall be valid against the plaintiff in the suit; and could the officer, by such agreement with the defendant, create a cause of action against the plaintiff? The plaintiff, by directing an officer to make an attachment of the property of the defendant, becomes liable to the officer to pay him the legal fees for such service. He became liable for nothing more. For such legal fees, the plaintiff, if he recovers in the suit, has a claim against the defendant, and may tax the amount, as fixed by law, as part of the costs which will be included in the judgment recovered.

The authority of an officer to appoint a keeper, and empower him to remain in the possession and retain the control of attached personal property, has been several times before the court.

In *Malcom* v. *Spoor*, 12 Met. 279, it was held that an officer, who entered a dwelling-house and made an attachment of the household furniture of the occupant, became a trespasser *ab initio* by putting in as a keeper, against the consent of the occupant, a person in a state of intoxication. In that case there is a strong implication, in the language of Shaw, C. J., that although it may be the right of an officer to place a keeper over attached property, such right is limited to the time necessary for the removal of the property. His language is: " In the case before us, the defendant had authority by law to enter the plaintiff's house, to serve legal process; but placing there an unfit and unsuitable person, to keep possession of the attached goods, in his behalf, until he could remove them, against the remonstrance of the plaintiff, was an abuse of his authority, which rendered him liable as a trespasser *ab initio*."

In *Boynton* v. *Warren*, 99 Mass. 172, the officer attached household furniture as the property of Susan M. Badger, in her house, "and left there a keeper of it." This was done June 6, 1865. On June 8, two days subsequently, she gave the defendant (the

officer) " written notice to remove the keeper forthwith, and forbidding the removal of the property." Badger appears to have been the general owner of the property, and to have mortgaged it to Boynton, the plaintiff. Colt, J., says : "It would seem to have been the duty of the defendant, after the notice, to proceed at once to remove the goods from the premises of the defendant in the suit, where they were left without her consent."

In *Williams* v. *Powell*, 101 Mass. 467, the defendant Powell was in possession of an office under a lease, and by parol license permitted one Keyes, an attorney at law, to use a portion of his office for his desk and law books, for a stipulated monthly sum, payable in advance. Keyes had paid the monthly rent for the month of June ; and on June 19th, the plaintiff, a constable of Boston, received a writ against Keyes, with directions " to attach the office furniture and library of Keyes on the writ, which was not by law exempt from attachment, in the office of said Keyes." The plaintiff made the attachment of said desk and law books about two o'clock in the afternoon of the same day, and left a keeper to hold possession until he could see Keyes. When the attachment was made, there was no one in the office except the office boy. The constable returned to the office at about a quarter before six the same evening, and there found both Keyes and Powell. The officer then said to Keyes that if he (Keyes) would let him have a key to the office, so that he could hold possession, they would leave. This Keyes declined. The officer then asked Powell for a key, for the same purpose, and he refused to give him one. The officer then procured a key to be fitted to the lock of the door, and gave it to the keeper. Powell then remarked that, if they had a key to the office, he should put on another lock and lock up the office for the night, and caused a chain to be attached to the door, by which the door could be made fast by a padlock. He then told the officer that Keyes had no rights there, and that if he (the officer) " had any property there which he claimed to hold, to immediately move it and himself leave the office ; that he (the defendant) was going to lock the office for the night." The officer then told him that it was so late that he could not that night find a team and help and a place to store the property, but would do so early the next morning. Powell immediately went out and secured the door

on the outside with the chain and padlock, and locked the officer and his keeper in. The officer then brought his action against Powell for false imprisonment. At the trial, the plaintiff offered to show that the usage among officers, in making attachments under similar circumstances, was the same as that pursued by the plaintiff, but the judge excluded the evidence. He then offered to show that, after the demand to remove the property was made, he did not have a reasonable time to get assistance, team and place to store it and remove the same before the locking of the door. The judge excluded this evidence. The plaintiff then claimed to go to the jury upon the question whether he did have a reasonable time to remove the property; but the judge declined to submit any question, and ruled that the plaintiff could not maintain his action, and directed a verdict for the defendants. To all these rulings exceptions were taken and the case brought to this court. The exceptions were all overruled by this court; and Gray, J., in giving the opinion of the court, says: " Five hours of daylight were clearly more than a reasonable time to remove an attorney's desk and law books of not more than two hundred dollars in value ; " and in reference to the practice of officers in similar cases he says: " Testimony that it was the custom of other officers to behave as unreasonably as this plaintiff would not show his conduct to be reasonable or lawful."

So in the earlier case of *Shattuck* v. *Woods*, 1 Pick. 171, 177, Chief Justice Parker said that the practice of other officers on like subjects was not legal evidence to support a charge not allowed by law; that an unlawful act would not become lawful by usage; and that it could not be known that this defendant might not himself have contributed to establish the practice under which he would defend himself.

In a very recent case, *Davis* v. *Stone*, 120 Mass. 228, the court say : " But the occupation of the plaintiff's house by the defendant with a keeper for seven hours in the middle of the day in the city of Boston, without making any attempt to begin to remove the goods, or, so far as appears by the bill of exceptions, taking any steps towards such removal, was, as matter of law, unreasonable, and made the defendant a trespasser."

These various cases present the question under different aspects, but the principle which underlies all is that, when personal property is attached by an officer, it is his duty, as soon as may be, to remove the property from the possession of the debtor and take it into his own immediate possession, and that the permanent stationing of a keeper over the property is not a proper mode of proceeding, nor one warranted by law.

Without, therefore, passing upon the question whether the fees of a keeper during the necessary interval between the attachment and removal of property attached may properly be charged, we are entirely clear that in this case, where the officer is directed to attach property only to the value of five hundred dollars, there is nothing to show that it was necessary for several weeks to have keepers at an expense of six dollars a day, together with two dollars a day additional as payment for some one to "guard the guardian." If the plaintiff directed the officer to incur this expense, the officer must look to the plaintiff for his indemnity; if the defendants authorized the officer to incur it, the officer must seek his remedy against the defendants upon that contract, if, in either case, such a remedy exists; it is not a legal fee taxable as costs in the suit.

The cases cited by the plaintiff have no tendency to establish a contrary doctrine. In *Weston* v. *Weston*, 102 Mass. 514, the officer, in the service of an execution, had charged "cash, for assistance, $23.90; extra time and trouble, $32.75." Morton, J., in his opinion, says: "We can see no authority of law for the charges for assistance and for extra time and trouble. The statutes provide that the fees of an officer for serving a writ of seisin or possession in real actions shall be one dollar and ten cents." "These provisions of the statutes limit the amount which the officer was entitled to charge in this case; and the items for assistance and for extra time and trouble are therefore disallowed." See also *Briggs* v. *Taunton*, 110 Mass. 423. In *United States Manuf. Co.* v. *Clark*, 119 Mass. 163, the only question decided was for how long costs should be taxed for the plaintiff against a defendant who had been charged as his trustee, and thereby was discharged from liability directly to him, upon a suit pending at the same time with the trustee process; and the court held that he was liable to the plaintiff for costs till he was charged as

trustee. No question was made as to any items of charge, nor do the items appear in the report of the case.

Nor is it open to the plaintiff to say that the question has been passed upon by the Superior Court as a question of fact, and that therefore it is not open to the revision of this court. The utmost effect that can be given to the findings of that court is this : that if the various charges are legal, the amount of the charges is reasonable. But there is no foundation in law for the charges.

The result therefore is, that the order of the Superior Court in the taxation of costs is reversed, and the case is to stand in that court for further proceedings.     *Ordered accordingly.*