## COMMONWEALTH *vs.* OLIVER H. PERRY.

Norfolk.   Feb. 24. — March 25, 1885.   C. ALLEN & COLBURN, JJ., absent.

An indictment charged that the defendant, at certain times and at a place named, "near the dwelling-houses of divers good citizens of the said Commonwealth, and also near divers public streets and common highways there situate," did keep and maintain five hundred swine, "by reason whereof divers large quantities of noisome, noxious, and unwholesome smokes, smells, and stenches, on the days and times aforesaid, then and there were emitted, . . . . and the air thereabouts . . . . greatly filled and impregnated with many noisome . . . . stinks and stenches, and has been corrupted and rendered very insalubrious, to the great damage and common nuisance of all the citizens," &c.   *Held*, sufficient.

A piggery, in which swine are kept in such numbers that their natural odors fill the air thereabouts, and make the occupation of the neighboring houses and passage over the adjacent highways disagreeable, is a nuisance.

On the trial of an indictment for maintaining a common nuisance, by keeping a large number of swine in the neighborhood of certain dwellings and highways, evidence is inadmissible that it is a custom in this Commonwealth to tolerate the location of such establishments in populous localities.

INDICTMENT charging that the defendant, on June 1, 1884, and on divers other days and times between that day and December 2, 1884, at Needham, "near the dwelling-houses of divers good citizens of the said Commonwealth, and also near divers public streets and common highways there situate, then and there did keep and maintain, and yet doth keep and maintain a large number of swine, to wit, five hundred; by reason whereof divers large quantities of noisome, noxious, and unwholesome smokes, smells, and stenches, on the days and times aforesaid, then and there were emitted, sent forth, and issued, and the air thereabouts on the days and times aforesaid was greatly filled and impregnated with many noisome, offensive, and unwholesome smells, stinks, and stenches, and has been corrupted and rendered very insalubrious, to the great damage and common nuisance of all the citizens of said Commonwealth there being, inhabiting, and dwelling, passing and repassing, to the evil example of all others in like case offending against the peace of the said Commonwealth, and contrary to the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, for the following reasons: "1. The indictment sets forth no crime or offence

known to the law. 2. No offence or crime is fully, plainly, sub-stantially, and formally set forth therein. 3. It is not therein alleged that the neighborhood in which said alleged nuisance is located is a populous neighborhood." This motion was over-ruled; and the defendant excepted.

The defendant was then tried before *Bacon,* J., who allowed a bill of exceptions, in substance as follows :

The government introduced evidence tending to show that the defendant, between the dates mentioned in the indictment, kept and maintained, in the town of Needham, on his premises, consisting of about twenty-five acres of farming land, swine to the number mentioned in the indictment; that on said prem-ises, and within a few feet of the Marked Tree Road, a public highway, which bounded them on the west, there was a build-ing used as a boiler-house, wherein the food for the swine was cooked, parts of which building were used as dwellings by the defendant's employees and their families; that on the east of said building was a large building arranged for keeping swine; that still farther east there was a barn used for storing food, &c., and on the east of that another building, arranged for keeping swine, similar to the other, each of said buildings being connected with the next one west of it. Each of the buildings in which swine were kept was about two hundred and fifty feet in length, divided into about seventy-five pens, with wooden floors; that the swine were during the latter part of said time all kept in said buildings, but during the rest of the time some had been allowed to range through a lot or field of about three acres, adjoining said buildings, some had been kept in pens adjoining said buildings, and some in the buildings; that Great Plain Avenue, a public highway, bounded said premises on the north, and intersected with said Marked Tree Road at a distance of eight hundred to one thousand feet from the place where said swine were kept; that the nearest dwelling-houses were about five hundred or eight hundred feet from said place; that on either side of Great Plain Avenue, both east and west of said intersection, and also on streets leading off of said avenue, there were, within a radius of one fourth of a mile from said place, a number of dwelling-houses, and a larger number within a radius of half a mile; that odors were borne on the wind from the said

place, and were noticeable on said highways; that said odors produced discomfort, sickness, and disgust to some of the occupants of said dwelling-houses; that at times they were so intense that some of said occupants were obliged to close their doors and windows; that said odors were the odors natural to swine, described by one witness as "pig odors," and by another as "the odor of one pig multiplied five hundred times," and by one other as "the odor of a piggery."

It was conceded that no swill, slops, or unclean food were fed to said swine, but that they were fed only on good grains, beets, and other vegetables. It was also in evidence that farming and the raising of swine were largely carried on at various parts of the town; in some cases, near the defendant's premises.

The defendant introduced evidence tending to show that said odors did not emanate from his premises; that there were other sources and places in the vicinity from which they might proceed; and that such odors as were emitted from his premises were merely the natural odors of swine, and were not offensive in character or degree.

The defendant offered to show, as bearing upon the question whether the establishment complained of in the indictment was a nuisance, on account of its proximity to highways and dwelling-houses, that throughout the Commonwealth it had been and was customary to locate and conduct such establishments, containing similar or greater numbers of swine, in much more populous localities, and nearer to dwelling-houses and travelled streets; that such establishments have so existed for years, and are tolerated by the usage and customs and habits of society in the present day in this Commonwealth. The judge ruled that such evidence was inadmissible.

The defendant requested the judge to instruct the jury as follows: "Evidence of the natural odors which come from the bodies of domestic animals (however annoying to certain persons) will not sustain an indictment for a nuisance. The keeping of swine to the number of five hundred near dwelling-houses and streets of a town is not *per se* a nuisance."

The judge refused so to rule, but on this branch of the case instructed the jury as follows: "The natural odor of one animal might not be a nuisance, but the natural odor of five

hundred might be. It is for the jury to say whether it was so in this case. Five hundred swine kept in the vicinity of roads and dwelling-houses might become a nuisance, where one would not. People residing in the neighborhood of this piggery have a right to have the air free and uncontaminated by odors, smells, and stenches offensive to the senses. It is not necessary for the government to show that the contamination of the atmosphere is to such an extent as to cause actual injury to health, but it will be sufficient for it to show that the smells and stenches are so offensive as to render the residences and habitations in the vicinity uncomfortable. The keeping of swine to the number of five hundred near dwelling-houses and streets of a town will become a nuisance, if smells and stenches actually emitted from such keeping are such as to render such dwelling-houses uncomfortable for residents, or to render the passing in said streets uncomfortable."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. J. Boardman & S. H. Tyng*, for the defendant.

*H. N. Shepard*, Assistant Attorney General, for the Commonwealth.

HOLMES, J. A piggery in which swine are kept in such numbers that their natural odors fill the air thereabouts, and make the occupation of the neighboring houses and passage over the adjacent highways disagreeable, or worse, is a nuisance. *Commonwealth* v. *Kidder*, 107 Mass. 188, 192. *Regina* v. *Wigg*, 2 Salk. 460; *S. C.* 2 Ld. Raym. 1163. See *Commonwealth* v. *Oaks*, 113 Mass. 8; *Commonwealth* v. *Upton*, 6 Gray, 473. The indictment was sufficient, and the instructions asked were erroneous. See further *Commonwealth* v. *Rumford Chemical Works*, 16 Gray, 231; *Commonwealth* v. *Sweeney*, 131 Mass. 579; *Commonwealth* v. *Brown*, 13 Met. 365. No defect has been pointed out in the instructions given. It would have been well if they had impressed more fully on the jury that the question was one of degree; but that was implied by what was said, and the defendant asked for nothing more specific.

Evidence of the practice throughout the Commonwealth was inadmissible. See *Cutter* v. *Howe*, 122 Mass. 541, 549.

*Exceptions overruled.*