# MYERS *v.* THE STATE.

[No. 21,023. Filed November 26, 1907.]

1. INDICTMENT AND INFORMATION.—*Nuisance.*—*Duplicity.*—An indictment charging that defendant maintained a building and fertilizer factory in which he kept the carcasses of dead animals, and to which he daily hauled such carcasses, and that he cut up and cooked such carcasses, thereby causing noxious, offensive and unwholesome odors to the annoyance of divers citizens of the State, sufficiently charges a violation of §2441 Burns 1908, Acts 1905, pp. 584, 709, §535, forbidding the use of a building in such manner as to constitute a nuisance, and does not state an offense under §2443 Burns 1908, Acts 1905, pp. 584, 709, §537, forbidding the placing of carcasses where they may constitute nuisances. p. 405.

2. INDICTMENT AND INFORMATION.—*Surplusage.*—Surplusage does not vitiate an indictment.    p. 407.

3. SAME.—*Nuisance.*—*Public Annoyance.*—An indictment charging that defendant maintained a building "near unto divers highways * * * and also near unto the dwelling houses and residences of divers inhabitants of said State," from which building were emitted noxious, sickening and offensive odors, and that by reason thereof "the inhabitants residing in the neighborhood of said factory and building, and the persons traveling on said highways are annoyed and injured thereby," sufficiently shows that the public was injuriously affected.    p. 407.

From Johnson Circuit Court; *W. J. Buckingham,* Judge.

Prosecution by the State of Indiana against Chris Myers. From a judgment of conviction, defendant appeals. Transferred from Appellate Court under §1393 Burns 1908, Acts 1907, p. 237, §2.    *Affirmed.*

*L. E. Ritchey,* for appellant.

*James Bingham,* Attorney-General, *William C. Geake, Henry M. Dowling* and *Edward M. White,* for the State.

HADLEY, J.—Appellant was convicted on an indictment charging him, in a single count, with maintaining a nuisance. His motion to quash the indictment, on the ground that two distinct, substantive offenses were charged in the same count, was overruled.    The prosecution is under section 535 of the act concerning public offenses (Acts 1905, pp. 584, 709, §2441 Burns 1908), which, so far as the same affects the averments of the indictment, is as follows: "Whoever erects, continues, uses or maintains any building, structure or place for the exercise of any trade, employment or business, * * * which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort or property of individuals or the public, * * * shall, on conviction, be fined not less than $10 nor more than $500."

Section 537 of said act (§2443 Burns 1908) provides in part: "Whoever puts the carcass of any dead animal * * * or any spoiled meat * * * or any putrid animal substance * * * upon * * * any common,

field, meadow, lot, road, street or alley, * * * to the annoyance or injury of any of the citizens of this State, * * * shall, on conviction, be fined not less than $1 nor more than $100.''

The indictment charges that Chris Myers, on June 1, 1905, and continually to and including the day of making this presentment, at said county and State, near unto divers public highways and near residences of divers inhabitants of said State, did unlawfully and injuriously maintain, operate, and control a certain building and factory, to wit, a grease and fertilizer factory, then and there fitted with boiler, engine, furnace, vats, and tanks, situated upon certain described real estate; that said Chris Myers did then and there continuously, up to the day of making this presentment, unlawfully haul and cause to be hauled to said factory a large number, to wit, 300 bodies, of dead horses, cows, mules, and hogs, that had died of various diseases, and did then and there unlawfully and injuriously skin, cut to pieces, tank and cook the bodies of said animals; that, during the cooking of said animals and the cooling thereof, steam and noisome and offensive smells escaped from said tanks and vats; that large quantities of blood and offal of said bodies were and are permitted to run over the floor of said building, and upon the ground about the same; that said animals were and are skinned upon the ground near unto said buildings, so that the earth under and about said buildings is saturated with the blood and offal of said bodies, and the same, becoming putrid and rotten, causes stenches, smells and stinks to arise therefrom; that large quantities of the cooked flesh and bones of said animals are stored in said building, and thrown upon the ground near unto said building, which said flesh, becoming putrid, decayed, rotten, and offensive, is the cause of smells and stenches arising therefrom; that, by reason of the unlawful maintaining, conducting and operating of said building and factory, as aforesaid, occasioning the smells and

stenches, as aforesaid, the air in and about said factory and building is saturated with noxious and noisome odors, and is thereby rendered and made impure, unhealthful and offensive, and the inhabitants residing in the neighborhood of said factory and buildings, and the persons traveling upon said highways, are annoyed and injured thereby.

We are unable to accept the position taken by appellant that the single count of the indictment contains two separate and distinct substantive offenses, one under §2441, *supra,* and the other under §2443, *supra.* It is safe to affirm that it was the legislative intent to cover, by said sections, distinctly different acts. It will be noted that §2441, *supra,* denounces the use or maintenance of any building or any place for the carrying on of any trade or any business which, by occasioning noxious exhalations or noisome smells, becomes injurious to the health and comfort of individuals or the public. What is aimed at by this section is the conducting of a trade or business of such character as to emit noxious and unwholesome odors where they injuriously affect the health or comfort of the public or of individuals; while §2443, *supra,* relates, not to the carrying on of a trade or business, but to a single act, namely, the placing of the carcass of any dead animal, or spoiled meat, or any putrid animal substance, upon any field, lot, etc., to the annoyance or injury of citizens.

Bearing in mind the distinction between the two sections, it is plain that no averment of the indictment has reference to §2443, *supra.* The first branch of the charge is that the defendant "did unlawfully and injuriously maintain, operate and control a certain building and fertilizer factory;" and what is termed the second branch of the indictment consists wholly of a description of the manner in which the factory was operated, and the things done that constituted the nuisance, namely, the daily hauling to the factory of a large number of bodies of dead animals that were decaying and putrid, skinning and cutting up said bodies on

the ground near the building, whereby the ground became saturated with the blood and offal of said animals, cooking the putrid flesh of said animals in vats, storing in the building and throwing out upon the ground near by large amounts of the cooked meat and bones, whereby noxious, offensive, and unwholesome odors were evolved, rendering the air in and about said building impure, sickening, and offensive, whereby the inhabitants residing in the neighborhood of said building and traveling upon said highways were and are annoyed. The indictment contains surplus matter, but it cannot be justly condemned for duplicity.

It is further contended that the indictment does not state a public offense, in this, that it fails to show that the factory was located in a public place, or that any part of the public was within the radius of the atmosphere that became impregnated with the noisome and unwholesome odors and smells emitted from the factory.

It is averred that the defendant maintained the nuisance "near unto divers public highways, then and there situate, and also near unto the dwelling-houses and residences of divers inhabitants of said State; * * * that, by reason of the manner aforesaid of operating said factory, and the smells and stenches emitted therefrom as aforesaid, the air in and about said building and factory is filled and impregnated with noxious, sickening and offensive odors, and thereby rendered impure and unhealthful, and the inhabitants residing in the neighborhood of said factory and building, and the persons traveling on said highways, are annoyed and injured thereby." We think the facts stated sufficiently show that the public was injuriously affected.

In *Acme Fertilizer Co.* v. *State* (1905), 34 Ind. App. 346, 107 Am. St. 190, the charge was that the defendant did erect and maintain a public nuisance to the injury of many citizens of the State of Indiana, by erecting a factory, near the dwelling-houses and homes of divers citizens of said county,

and did wrongfully create and suffer to escape from said building into the open air, divers, noisome, offensive and poisonous smells, so that the air, for a great distance, was thereby impregnated with said smells and rendered noisome and offensive and,injurious to the health, comfort and property of many citizens of the State of Indiana, residing in the neighborhood of said building, and it was held sufficient as showing an injury to the public.

In *Commonwealth* v. *Perry* (1885), 139 Mass. 198, 29 N. E. 656, under a similar statute it is charged that the alleged nuisance was "near the dwelling-houses of divers good citizens of said commonwealth, and also near divers streets and highways there situate;" and it was held that the words, "and the air thereabouts was greatly filled and impregnated with many noisome, offensive, and unwholesome smells, and odors, and has been corrupted and rendered insalubrious to the great damage and common nuisance of all the citizens of said commonwealth there being, dwelling, passing and repassing," were sufficient for the same purpose. Likewise in *Horner* v. *State* (1878), 49 Md. 277, where the charge was "near unto divers roads and streets, and also near unto the dwelling-houses of divers liege inhabitants of the state," it was held that the charge that "divers noisome, offensive, and unwholesome smokes, smells, and stenches, during the time, etc., were from thence emitted and issued, so that the air then and there was, and yet is greatly filled and impregnated with said smokes, smells and stenches, and was, and is rendered and become, and was and is corrupted, offensive, uncomfortable, and unwholesome, to the great damage and common nuisance of all the liege inhabitants of the state, there inhabiting, being and residing, and going and returning, and passing through the roads and highways," was held sufficient to show a public injury.

Judgment affirmed.