## Case No. 4,622.

### FALES et al. v. MAYBERRY.

[2 Gall. 560.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1815.

[1] [Reported by John Gallison, Esq.]

And now Mr. Robbins, of counsel for plaintiffs,

Mr. Hunter, for defendant.

STORY, Circuit Justice. You need not labor the argument. Certainly this action cannot be maintained. The traffic in slaves is a most odious and horrible traffic, contrary to the plainest principles of natural justice and humanity. And it has been very forcibly and correctly observed by a learned judge (Sir W. Grant,—Wheat. Mar. Capt. 229), that, abstractedly speaking, it cannot have a legal existence. The laws of the United States, long before the inception of this voyage (Act 22d March, 1794, c. 11 [1 Stat. 347]), prohibited, under severe penalties, (including the forfeiture of the vessel) any trade by American citizens in carrying slaves to, from, or between any foreign countries. The voyage was, in its very elements, infected with the deepest pollution of illegality; and the present action is brought between the very parties, who formed and executed this reprehensible enterprise. But the court are told, that an agent has no right to set up, in his own defence, the illegality of the contract between himself and his principal. It might be a sufficient answer to this argument, that this is not the case of a mere agency, but of a partnership in an illegal transaction; and nothing is better settled, than that, as between partners, no action can be sustained upon a contract in violation of the laws. But there is nothing in the argument itself, standing upon the footing of a mere agency. The cases cited do not at all come up to the position contended for by the plaintiffs' counsel. The most that they decide is, that if money due on an illegal contract be paid into the hands of a third person, for the benefit of one of the parties, he may maintain an action to recover it, for it is money paid to his use. But they do not decide, that if the agent be a party to the original transaction, and the money in his hands be the proceeds of the illegal contract, such a recovery can be had against him. Nor do I perceive how, upon principle, such a decision could be sustained. A party alleging his own turpitude shall not be heard in a court of justice to sustain an action founded upon it; and, where the parties stand in pari delicto, the law leaves them, as it finds them, to reap the fruits of their dishonesty, as well as they may. Simpson v. Bloss, 2 Marsh, 542.

As to the sale of the ship, it was a part of the original scheme, evidently adopted to evade the forfeiture inflicted by the laws of the United States; and cannot be distinguished from the other items of claim.

But great stress is laid on the circumstance, that there has been an assignment to Mr. Homer; and it is argued, that at all events this completely purges away the original sin of the transaction, especially as the defendant has expressly promised to pay the assignees. In respect to the express promises, founded on the acceptance of the orders drawn by the plaintiffs, it is sufficient that the present action is not founded on them. The plaintiffs cannot draw in aid of the present suit promises made to third persons; and the counts alleging the promises to be to the plaintiffs as trustees are wholly unsupported

by the evidence. Whatever may be the case therefore in a suit brought by the assignees in their own names on the acceptances, it is clear that as between the parties to this suit, the assignment cannot affect the legal conclusion applicable to cases of illegal contracts.

It is not, however, pretended that the assignees are purchasers for a valuable consideration without notice of the original transactions. If, under such circumstances, the assignment could wipe away the original stains, it would be the most cheap and facile absolution, that fraud or cunning could devise. It would be a carte blanche for a general pardon of all offences. I do not so understand the law. The general rule is, that the assignee of a chose in action cannot stand in a better situation than his assignor, as to his rights against other persons, derived from the assignment. There are exceptions to this rule, founded upon public policy; but they do not touch the present case. Where the assignees have notice of the nature and the circumstances of the claim, they are uniformly held affected by all the legal consequences attached to its original character, even in respect to negotiable instruments. Steers v. Lashley, 6 Term R. 61; Brown v. Turner, 7 Term R. 630. And where the instrument is not negotiable, even a want of notice has not been supposed to give validity to the assignment of a chose in action, which, as between the original parties, was infected with fraud or illegality. It is indeed extremely doubtful, whether after the express acceptances of the defendants, an action can be maintained, even with the consent of the assignees, against the defendants, upon the original contract. As the point was not raised at the trial, it is not necessary to decide it. But for the other reasons the motion for a new trial is overruled.