## ALLEN *vs.* DEMING.

The execution and delivery of a promissory note on Sunday, is " business" of a person's " secular calling," and as such is prohibited under a penalty, by the act of December 24th, 1799, and the note is void.

Whether a note given for the price of goods bought on Sunday be void in the hands of an innocent indorsee, *quære?*

An action cannot be maintained if it have no other foundation than a contract made on Sunday.

The defendant bought a quantity of shingles on Sunday, and at the same time gave his promissory note to the seller for a part of the price. He permitted the shingles to remain with the seller for about a month, and then took them away.—*Held*, that the contract was complete on Sunday, and was void.

Where a party purchases goods on Sunday, and takes possession of them on a subsequent day, whether he is liable for their value on a *quantum meruit, quære?*

ASSUMPSIT upon a promissory note, dated on the 31st day of March, 1838, made by the defendant, payable to one Ira Coffin or order, and by him indorsed.

It appeared in evidence that the note was given for a part of the purchase money for a quantity of shingles; that the contract for the shingles was made on the Sabbath, and the

note executed and delivered on the same day, but dated on the day previous. The shingles were at Coffin's, where they remained for about a month, when the defendant took them away and sold them.

The defendant contended that the note, being made on the Sabbath, was void and incapable of ratification, and that, being void, no indorsement of it could vest a right of action in an indorsee. But the court instructed the jury that the acts of the defendant in taking and selling the shingles on a subsequent day were a ratification of the contract, and that he could not after that avoid the note because it was made on the Sabbath.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*Carleton*, for the defendant. The note is void. *N. H. Laws* 167 ; 4 *N. H. Rep.* 153. And it cannot be ratified ; 5 *N. H. Rep.* 196. The remedy, if any, is for the value of the shingles. 3 *N. H. Rep.* 349 ; 7 *N. H. Rep.* 368.

*Morrison*, for the plaintiff. In this case, what took place subsequent to the making the note amounts to a confirmation of it. The statute is not designed to affect the contract and declare it void, but only to point out the time when it may be made. Even if the note may be void as between the parties, it is not so in the hands of an indorsee. 8 *N. H. Rep.* 334. He has violated no law, and has incurred no penalty. Where a statute has made notes utterly void, they are so in the hands of every body. 5 *Mass.* 586 ; *Dougl.* 741. But unless it is expressly so declared by statute, illegality of consideration is no defence to a suit by a *bona fide* holder. 2 *N. H. Rep.* 410 ; 1 *Saund. Pl. & Ev.* 307 ; 1 *Wheaton's Sel.* 244. Usurious notes are utterly void by statute. 1 *East* 92. Yet Lord Kenyon said he thought the statute had gone far enough in making them void in the hands of an innocent indorsee without notice ; and where a

bill was legal in its inception, he held that no advantage could be taken of what happened afterwards against *bona fide* holders. The cases of *Fennell* vs. *Ridler, 5 B. & C.* 406, and *Bloxsome* vs. *Williams,* 3 *B. & C.* 232, intimate that a note made on Sunday would be valid in the hands of an innocent indorsee.

*Wilcox,* in reply, contended that the note could not be confirmed by any matter subsequent to its inception, because it was originally void, and so was incapable of confirmation. 2 *Vezey* 125, *Chesterfield* vs. *Janssen* ; *Co. Litt.* 295, *b ;* 1 *Story's Eq.,* § 306. If it could be ratified, the ratification would operate as a repeal of the statute : for then a note made on Sunday, and prohibited by law, would by the ratification be good from the beginning. *Clough* vs. *Davis,* 9 *N. H. Rep.* 500, was not a case of ratification of a contract made on Sunday, for the contract was actually made on Monday, and the ratification was of that contract. The question does not arise here whether such a note would be good in the hands of an innocent indorsee. But even in that case the note would be void, for it cannot lose the character of illegality fixed upon it by the statute.

GILCHRIST, J. The first section of the act of December 24th, 1799, *N. H. Laws* 167, (Ed. of 1830,) provides that no person whatsoever shall do or exercise any labor, business or work of his secular calling, works of necessity and mercy only excepted, on the Lord's day, under a penalty of six dollars.

If we regard the language of this statute as we examine the phraseology of other laws, its meaning is clear and explicit. If we seek to ascertain the purport and object of the law, apart from all considerations of its policy and expediency, with which this court has nothing to do, its intent seems to be free from all doubt. No plainer or more comprehensive terms could be used, no simpler or more intelli-

gible expressions could be found, than those in which the legislature have clothed their ideas on this subject. Its language and meaning are as plain to ordinary perception as are those of any other law by which certain acts are prohibited under a penalty. But, in the judgment of many persons, such a law is impolitic, and ought never to have been enacted, and they easily reach the illogical result, that therefore it should be disregarded by those whose duty it would otherwise be to enforce it, or at least that great astuteness may be properly exercised to defeat its operation. The law is alleged to be difficult in its application and unjust in its effects; to interpose an inequitable defence to an honest demand; to interfere unnecessarily with freedom of opinion and of action; and to give to merely formal observances the high sanction of the law. Some tribunals even have seemed to consider at as a law which had better be suffered to pass in silence, upon the ground substantially that it had been repealed by public opinion. And the establishment of the principle contended for by the defendant will lead, it is said, to results which no legislature would sanction. But to declare any contract or any class of contracts void, may involve consequences which it would be desirable to obviate. This may be an argument against the expediency, but, except in a very limited sense, not against the binding force of a law. The application of a principle often causes individual hardship, but where the law is plain, it must be declared. Reasoning of this kind cannot properly have weight with a tribunal whose duty it is not to make but to expound the law, and which must leave the consequences of that exposition to those who have the constitutional right to determine what laws are required by the public good.

It appears that the ancient christians " used all days alike for the hearing of causes, not sparing (as it seemeth) the Sunday itself." One reason for this was, that they might not imitate the heathens, who were superstitious about the observance of days; and also, that by keeping their own courts

always open, they might prevent christian suitors from resorting to heathen courts. *Spelman's Original of the Terms,* c. 17 ; *Swann* vs. *Broome,* 3 *Burrow* 1598. But the practice ceased with the reason for it, and in the year 516 a canon was made, " Quod nullus episcopus vel infra positus die dominico causas judicare præsumat." This canon, with others of a similar character, was confirmed by William the Conqueror and Henry the Second, and so became part of the common law of England. But the canons extended no farther than to prohibit judicial business on Sundays ; for fairs, markets, sports and pastimes, might still take place on the Sabbath. *Comyns* vs. *Boyer, Cro. Eliz.* 485, decides that a fair held on Sunday is well enough, although by the 27 *Hen.* 6, *ch.* 5, a penalty was inflicted on him who sold on that day. The toleration of amusements and the existence of fairs in England to a greater or less degree upon the Sabbath, are readily accounted for by their known accordance with the practice of Roman Catholic countries, among which was England until the Reformation in the reign of Henry the Eighth. With the spread of the reformed religion, and the consequent improvement in civilization, the views and manners of the people changed on the subject of the rational observance of the Sabbath, and in all Protestant communities laws were enacted to secure it, varying in their provisions with the peculiarities of the people. Pastimes of various kinds were prohibited by the 1 *Car. I., c.* 1 ; and by the 29 *Car. II., ch.* 7, all persons were prohibited from " doing or exercising any worldly labor, business, or work of their ordinary callings, upon the Lord's day." Under this statute several decisions have been made, principally upon the question whether the contracts which were the subjects of litigation were within the " ordinary calling" of the parties. *Drury* vs. *Defontaine,* 1 *Taunton* 131 ; *Smith* vs. *Sparrow,* 4 *Bingh.* 84 ; *Bloxsome* vs. *Williams,* 3 *B. & C.* 232 ; *Fennell* vs. *Ridler,* 5 *B. & C.* 406. Wherever the contract was within the ordinary calling of the party, it was

held to be void, upon the principle that whatever is forbidden under a penalty cannot be the foundation of a valid contract, although the law was once held otherwise; *Drury* vs. *Defontaine.* It is difficult to see why this principle should not always have been recognized. A party should not be heard before a tribunal whose duty it is to declare the law, when his cause of action arises from a transgression of the law. The principle has been applied to the sale of lottery tickets, *Hunt* vs. *Knickerbacker,* 5 *Johns.* 327; to a promissory note for the price of shingles under the statutory dimensions, *Wheeler* vs. *Russell,* 17 *Mass.* 258; to a sale of wood by the cord, not measured by a wood measurer, *Pray* vs. *Burbank,* 10 *N. H. Rep.* 377; and to many other cases. *Fales* vs. *Mayberry,* 2 *Gall.* 560; *Law* vs. *Hodson,* 11 *East* 300; *Parkin* vs. *Dick,* 11 *East* 502.

In *Geer* vs. *Putnam,* 10 *Mass.* 312, in the common pleas, to an action of assumpsit on a note, the maker pleaded in bar that it was made on the Lord's day, to which the plaintiff demurred generally, and the plea was adjudged insufficient. The counsel for the defendant, on error brought, said, apparently by way of apology, that he made the plea at his client's instance, who had lost a debt in Connecticut on the same ground; but he seemed to think the plea was not to be supported. The chief justice recollected a case in which the court upon deliberation overruled this defence, and the judgment of the court of common pleas was affirmed. This case is the foundation of the doctrine which has since obtained in Massachusetts, that a contract made on Sunday is valid, although the *St.* 1791, *ch.* 58, *sec.* 1, prohibited any manner of labor, business or work on Sunday, except works of necessity and charity. The case of *Clap* vs. *Smith,* 16 *Pick.* 247, was decided upon the authority of *Geer* vs. *Putnam.* Should a case arise, however, in which the law of these cases should be inquired into upon principle, (an examination which it does not appear thus far to have received,) it is not improbable, judging from the legal

learning and ability of that court, that they may be over-ruled.

The act of *W*. 3, *sect*. 1, *Prov. Laws of N. H*. 8, imposed a penalty upon all persons who should "do or exercise any labor, business, or work of their ordinary callings," on the Lord's day, following the language of the 29 *Car*. 2. The act of Feb. 2d, 1789, *N. H. Laws* 291, (Ed. of 1797,) is like the above, excepting that the word *secular* is substituted for the word *ordinary*, and it is also used in the act of Dec. 24, 1799, the law now in force. We have no reported case in which the validity of a contract made on Sunday has been inquired into. It is to be inferred, from the language of the court in the case of *Frost* vs. *Hull*, 4 *N. H. Rep.* 157, that such a contract would be invalid ; but that was not the question before the court. And the case of *Shaw* vs. *Dodge*, 5 *N. H. Rep.* 462, decides that the service of civil process on that day cannot be justified. In *Clough* vs. *Davis*, 9 *N. H. Rep.* 500, although it is said that the prevailing opinion seems to be that in this State all secular contracts made on the Sabbath are void, the point whether a note made on that day is void, is left undecided, as not being before the court. The question therefore in the present case may be regarded as an open one. In relation to it, however, we entertain no doubt. The word "secular" means " temporal, pertaining to temporal things, things of this world, worldly ; also, opposed to spiritual, holy." *Richardson's Eng. Dictionary.* The giving a note certainly pertains to things of this world, and is a matter of secular business. The most latitudinarian would scarcely consider it as having a spiritual character.

It is alleged that, even if the transaction were a matter of secular business, and so prohibited by the statute, it became valid by the subsequent acts of the defendant. But the contract was made on Sunday, and the note was executed and delivered on Sunday. The shingles remained at the plaintiff's house, it is true, but they remained there, not that the contract for their sale was incomplete until their removal,

or was so considered, but merely as it would seem for the convenience of the defendant. Nothing remained to be done on the part of the seller, to vest the property in the purchaser. The contract, then, having been made on Sunday, was void, and therefore incapable of being ratified. Thus marriage brokage contracts are void, as against public policy, and incapable of confirmation. 1 *Fonbl. Eq.*, b. 1, ch. 4, § 10, (n. s.) ; *Roberts* vs. *Roberts*, 3 *P. Wms.* 66 ; 1 *Story's Eq.* § 306, 345. The general rule is, that whenever any contract or conveyance is void, either by positive law or upon principles of public policy, it is deemed incapable of confirmation. It cannot operate on an estate which is void at law. *Co. Litt.* 295, b. And if it be of a void thing, it avails nothing, nor can it make good a void lease. *Com. Dig., Confirmation, (D* 1.) In *Smith* vs. *Sparrow*, 4 *Bing.* 84, *Best*, C. J., says : "I do not say that the mere inception of a contract on a Sunday will avoid it, if completed the next day, but if most of the terms are settled on Sunday, and the mere signature be deferred till the next day, such a contract could scarcely be supported." And *Gaselee*, J., remarks, "that the plaintiff's subsequent assent was an assent to the contract made on the Sunday, and there is no evidence to show that there was any subsequent contract. Here the whole contract was completed on the Sunday ; so that it is unnecessary to enter into any nice distinctions, or to decide whether a contract would be binding if all the terms of it were agreed on Sunday, and a writing containing them signed the first thing on Monday morning."

It has been argued at the bar, that *Clough* vs. *Davis* is a case of ratification of a contract made on Sunday. But there the note was written on Sunday, and given to an agent, with authority to deliver it on Monday. No contract was completed on Sunday, but something remained to be done. The attempt to confer an authority on Sunday was ineffectual. It was the simple case of a person assuming to act as agent for another without authority. But the note came into the

hands of the payee, whether with or without an original authority was immaterial, for while it was there the defendant promised to pay it, and thus made a new contract.

But it is said the plaintiff is an indorsee, and that the note is not void in his hands. In *Drury* vs. *Defontaine,* 1 *Taunt.* 131, a contract made on Sunday was said to be void. In *Bloxsome* vs. *Williams,* 3 *B. & C.* 232, the disability to sue upon such a contract is confined to those who become parties to it with the knowledge that it is illegal. In *Fennell* vs. *Ridler,* 5 *B. & C.* 406, it is held that it would not be void so as to defeat a claim by an innocent party, and that such must have been the meaning of the court in *Drury* vs. *Defontaine.* But this case finds merely that the plaintiff is an indorsee. He is not necessarily, nor is there any presumption that he is, innocent of all knowledge of the original illegality of the contract. If any farther facts appeared on the trial than are presented by the case, it may perhaps be amended in such a way as to present other questions. And perhaps, as the defendant took the shingles into his possession subsequent to the Sabbath, he may be made liable for their value upon a *quantum meruit,* upon the authority of the case of *Williams* vs. *Paul,* 6 *Bingh.* 653. But the plaintiff cannot maintain his suit, if it have no other foundation than the contract made on Sunday, and upon the present facts he is not entitled to recover.

*Verdict set aside.*