## STATE v. RAND.

The purchaser of liquor sold in violation of the statute is not guilty of a criminal offence, and cannot be excused from testifying as to the purchase.

INDICTMENT, against Hamilton L. Rand, for the sale of spirituous liquor.

The substance of the indictment was, that the defendant, at Concord, on the first day of July, 1871, not being an agent of a town for the purpose of selling spirit, did sell one glass of spirituous liquor to one Charles E. Savory.

Said Savory being called as a witness for the State, and being asked,— " Have you purchased any spirituous liquor of the defendant within a year past ? " replied,—" I decline to answer, because it would crimi- nate myself. If I induced him to sell me liquor, would I not be a par- ticipator in that act ?"

On the question of the privilege of the witness, the court found that the defendant was not a town agent ; that the witness knew the de- fendant was not a town agent ; that the witness requested the defend- ant to sell him a glass of spirituous liquor ; that the defendant, in com- pliance with and in consequence of the request of the witness, sold him a glass of spirituous liquor ; that without this request the sale would not have been made ; that the witness and the defendant knew that the sale would be and was a criminal offence ; and that, so far as any question of fact is involved in the privilege claimed, the witness, by his request, and the usual promise of payment understood and implied therefrom, induced and procured the defendant to make the sale.

The court reserved the question, whether, upon the foregoing facts, the witness should be compelled to testify to said sale.

*Attorney General* and *Solicitor*, for the State.

*A. & F. A. Fowler* and *Minot, Tappan & Mugridge*, for the witness.

SMITH, J.  The question presented is, whether the purchase consti- tuted a crime.  If it did, the purchaser cannot be compelled to testify. Constitution of N. H., Bill of Rights, article 15.

" If any person shall sell    *    *    *    spirituous liquor    *    *    *    * he shall be fined    *    *    *    " &c.   Gen. Stats., ch. 99, sec. 13.   It is argued that the purchaser aids in or procures the sale, and thus makes himself criminally liable under sec. 1 of ch. 266, Gen. Stats., which provides that " if any person shall aid in, counsel, hire, or pro- cure the commission of any offence, or shall be accessory thereto, be- fore or after the fact, he shall be punished in the same manner as the principal offender, and may be tried and convicted thereof, either be- fore or after the conviction of the principal."   Probably the chief pur- pose of the original enactment of this statute in 1842 (Rev. Stats., ch. 221, sec. 1) was, to remedy the defects in the common law relative to the trial of accessories, to which public attention had been directed by the trial of Knapp for the murder of Joseph White, at Salem, Massachusetts, in 1830.   See 1 Bishop Crim. Law, 3d ed., sec. 614. So far as the statute declares aiders and procurers criminals, it is, in the main, only a reënactment of the common law.   An enactment " in its nature declaratory of the common law" "will be construed, as far as may be, according to the common law."   "A statute, general in its terms, is always to be taken as subject to such exceptions as the com- mon law requires."   1 Bishop Crim. Law, 3d ed., secs. 191, 192.   It could not have been the intention to repeal by this statute the estab- lished rules of interpreting and construing penal statutes.   If, prior to

the enactment of the statute relative to accessories, a particular phraseology in statutes of a special description was construed as exempting a certain class of persons from criminal liability as aiders or procurers, that rule of construction still remains in full force. Upon the creation by statute of a new offence, the intention of the legislature to exempt procurers from the statute penalties need not be manifested by an express provision to that effect. It may be inferred from the phraseology of the statute, construed according to established rules of interpretation, and considered in connection with the general scope and purpose of the statute. Neither the sale nor the purchase of liquor is a crime at common law. In legal contemplation, the sale "is an offence because the statute declares it to be so, and for that reason alone. It is an offence, therefore, which has precisely the proportions the statute gives to it, and it can have no other or greater." Have the legislature, in the statute prohibiting the sale of liquor, manifested their intention that purchasers should not be subject to the operation of the general rules of law relative to aiders and accessories?

The statute itself, " by the distinction it makes," in the section imposing the penalty, has marked the seller as the only criminal. " Every sale implies a purchaser; there must be a purchaser as well as a seller; and this must have been known and understood by the legislature." Yet the penalties for selling are all imposed upon one of the parties, the seller. In most offences, the coöperation of two persons, occupying different and, in one sense, antagonistic relations, is not requisite to the commission of the crime. The criminality of an assault, for instance, does not depend on the mental concurrence or physical coöperation of the assailant and the assailed. In such cases it cannot be contended that the omission to insert in each penal statute the general rules of law relative to accomplices and accessories, evinces the legislative intention to except such persons from criminal liability. But the case at bar is different. Here is an offence, created by statute, which cannot be committed except by the physical coöperation and mental concurrence of two persons who occupy different, not to say antagonistic relations, and act from widely differing motives. There may be very slight foundation, in abstract reason, for making any discrimination as to the relative guilt of these parties; but it is matter of common knowledge, that the public at large do make a marked distinction between them, believing the purchaser by far less culpable than the seller, and frequently regarding the former as the victim of the latter. Under such circumstances, does not the imposition of the penalty upon that one of the two indispensable parties to the commission of the offence, who is, in popular estimation, much the more culpable, imply an intention to allow the other party to go unpunished? "*Expressio unius est exclusio alterius.*"

This construction is strengthened by considering the probable purposes of the legislature in enacting the prohibitory liquor law. Conceding that one object was the protection of the community at large, it is still undeniable that another and a prominent object was the

protection of the buyer, or, rather, the class of persons likely to become buyers. The law was designed to protect men against themselves; to relieve the weak by removing temptation.

The rules of statute interpretation, enunciated prior to the enactment of the prohibitory liquor law, and still recognized as sound, justify the court in giving weight to the above considerations. In cases of *mala prohibita*, the fact that the penalty is in terms imposed upon only one of two parties whose concurrence is requisite to the commission of the offence, and that the statute was made for the protection of the .other party, who is generally regarded as the less culpable of the two, has repeatedly been considered good ground for giving the statute a construction exempting the party not named from criminal liability.  See *Browning* v. *Morris*, Cowper 790; *Williams* v. *Hedley*, 8 East 378; *Tracy* v. *Talmage*, 14 N. Y. 162, pp. 181–186; *Curtis* v. *Leavitt*, 15 N. Y. 9, pp. 285–289; *Sacketts Harbor Bank* v. *Codd*, 18 N. Y. 240; *Buffalo City Bank* v. *Codd*, 25 N. Y. 163; RICHARDSON, C. J., in *Roby* v. *West*, 4 N. H. 285, pp. 288, 289; PERLEY, C. J., in *Prescott* v. *Norris*, 32 N. H. 101, p. 105; *White* v. *Franklin Bank*, 22 Pick. 181; SARGENT, J., in *Butler* v. *Northumberland*, 50 N. H. 33, pp. 38, 39.

If any doubt still remains as to the meaning of section 13, chapter 99, we think that doubt can be removed by examining other portions of the chapter.

Section 25 of chapter 99 imposes a fine of from one to ten dollars, or imprisonment not over thirty days, as a penalty for drunkenness in certain places or under certain circumstances. The drunkenness thus punished might, of course, result from the use of liquors imported by, or given to, the consumer; but it is not unlikely to be the result of the use of liquor sold to the drinker in violation of law; and the 26th section of chapter 99 (as well as the 9th section of the original prohibitory law, P. L., 1855, chapter 1658) clearly indicates that the legislature contemplated the possibility, or, rather, the probability, of such a state of facts. If, then, the purchaser is liable under section 13, he may, in some instances, be subjected to a double punishment. Such a result is not beyond the power of the legislature, but it is not to be easily presumed that they intended to accomplish it. It has been forcibly observed, that " it seems hardly consistent with the obvious general purport of the law, which in terms is levelled almost exclusively against the seller, to say that the legislature intended to punish the unfortunate buyer with the same severity as the seller, and, in addition, to pursue him with a further penalty for consequences which would never have befallen him but for the prohibited act of the principal offender." On the contrary, the contingency that the purchaser may be punished under section 25 increases the probability that the legislature intended that he should be exempted from the penalties of section 13; tending to show that the omission in section 13 to impose the penalty upon the purchaser as well as the seller was intentional.

Section 26 of chapter 99 provides that if the person arrested for drunkenness shall, before conviction, " disclose of whom and where he

obtained the liquor producing such drunkenness, file his complaint on oath against the person furnishing the same, and testify fully on his trial in relation thereto, he shall be discharged." The original prohibitory law (P. L., 1855, ch. 1658, sec. 9), of which chapter 99, General Statutes, is a substantial reënactment, clearly shows from what the witness is to be " discharged." The language there used is,—" the said magistrate or court shall thereupon discontinue the said prosecution for drunkenness, and the person so arrested shall be discharged, and shall not be liable to be prosecuted again for the same offence, and the county shall pay the costs of the said prosecution." If the purchaser is liable to the penalties imposed upon the seller, the provisions of section 26 are somewhat extraordinary. In that view, section 26 is an offer to a criminal to relieve him from the consequences of one offence if he will confess himself guilty of another offence. The penalty from which he is thus allowed to relieve himself may be as light as a fine of one dollar. The penalty to which he makes himself liable by his confession cannot be less than fifty dollars. If the drunkard is imprisoned under section 25, the longest term is thirty days. But, if he is liable for aiding the seller to commit a second offence, he may be punished by imprisonment for ninety days, as well as by a fine of one hundred dollars. " There is a strong intrinsic improbability that any such legislation should have been designed, and such a construction of the statute can be adopted only when it is found that it is reasonably capable of no other." If the legislature did not intend that the buyer should be exempted from all penalties imposed upon the seller, it is hardly conceivable that they would have offered him such an inadequate motive for testifying to the fact of purchase. They would undoubtedly have added to section 26 a proviso exempting the witness from prosecution " for any offence so disclosed by him." Such a proviso is inserted in the 20th section of the same chapter, relative to the compulsory testimony of clerks, servants, or agents. It is true that, in the latter section, the insertion of such a proviso may have been a constitutional necessity; but that section shows that the legislature understood themselves to have the power of giving such indemnity, and it is very clear that, if the construction now contended for by the witness is correct, such an indemnity is absolutely essential to make section 26 effect the purpose for which it was obviously intended, viz., the procurement of testimony against sellers.

In the case at bar, the court at the trial term have found, as matter of fact, that the witness requested the defendant to sell the liquor ; that the sale was made in consequence of the request ; and the witness, by his request and the usual promise of payment understood and implied therefrom, induced and procured the defendant to make the sale. If it were material to the decision of the question raised, we should be inclined to remand the case to the trial term for a further and fuller finding of facts. Upon such further finding it might perhaps appear that the defendant had, prior to the sale to the witness, held himself out as engaged in the business of liquor-selling ; that it was in conse-

quence of this holding out that the witness was induced to make the request; and that the defendant's standing offer to sell was the immediate cause of the purchase,—the purchaser's so-called "request" being in effect nothing more than an acceptance of the defendant's standing offer. But it is not material to inquire more fully into the facts of this particular case. In at least nineteen twentieths of the illegal sales of liquor, one of the proximate causes of the purchaser's request to buy is his knowledge, derived from the seller's words or acts, of the seller's willingness to sell. The legislature, fully aware of this state of things, have seen fit to pass a general law applicable to all cases alike, leaving, as we think, no opportunity for the courts to establish exceptions grounded on the special circumstances of particular cases. As we view that law, the purchaser is not liable by reason of his participation in the sale, no matter whether he is more or less responsible for inducing the sale.

Very few direct authorities have been cited by counsel. *Doran's case*, 2 Parson's Select Cases (Penn.) 467, referred to by the counsel for the witness, is not in point. The Pennsylvania statute of Feb. 17, 1762, made it a crime for any person " to buy, sell, or expose to sale " tickets in lotteries. In 1846 the question was raised, whether the purchaser could be compelled to testify against the seller. The court held that that part of the statute of 1762, which makes it an offence to buy a lottery ticket, was still in force, and, of course, excused the purchaser from testifying. In *State* v. *Bonner*, 2 Head (Tennessee) 135, the remarks of McKinney, J., which are accurately quoted in the note to 1 Bishop on Crim. Law, 3d ed., 605, directly sustain the refusal of the witness. The Tennessee statute prohibited the sale of liquor by slaves; and the case decides that a white man, who purchases from a slave, commits a criminal offence. *Com.* v. *Willard*, 22 Pick. 476, decides that a witness is not excused from testifying to a purchase of liquor from an unlicensed vendor. We are not prepared to adopt the view there advanced, that one who approximates so nearly to the direct act, as a purchaser does, is not liable as an aider or accessory because of the comparatively insignificant character of the main offence. There are, however, other reasons assigned by Shaw, C. J., not dissimilar to some grounds taken in this opinion. In *Com.* v. *Downing*, 4 Gray 29, the court, without any statement of reasons, recognized the decision in *Com.* v. *Willard*, as applicable in prosecutions under the more stringent prohibitory law; and this decision has been followed in later cases. See *Cobb* v. *Farr*, 16 Gray 597, p. 598; *Walan* v. *Kerby*, 99 Mass. 1, pp. 2, 3; *Adams* v. *Goodnow*, 101 Mass. 81, p. 82.

In this State, statutes have been in force " almost from the foundation of the government," inflicting penalties under certain circumstances upon sellers of liquor. Hundreds of prosecutions and convictions of sellers have been had under these statutes, " most of which have been sustained by the testimony of buyers." The sellers have often been highly indignant with the buyers for testifying truly, and have sometimes resorted to personal violence to gratify their

revenge.   Yet no prosecution against the buyer for aiding or abetting the sale has ever been attempted, within the knowledge of the court. Nor have counsel cited any instance of such a prosecution under similar statutes in other jurisdictions, unless it be the Tennessee case. That such a prosecution is unprecedented in this State " shows very strongly what has been understood to be the law upon the subject." See SHAW, C. J., in *Com. v. Willard*, 22 Pick. 476, p. 478.

The witness should be directed to answer, and, if he refuses, should be punished for contempt.

*Case discharged.*