In re Maryrose ARSENAULT, Debtor.

Maryrose ARSENAULT, Plaintiff,

v.

REALTY FUNDING CORP., Defendant.

Bankruptcy No. 93–3060–JEY.
Adv. No. 93–1174–JEY.

United States Bankruptcy Court,
D. New Hampshire.

June 30, 1995.

Peter Wright, Wright & Cherry, Henniker, NH, for Maryrose Arsenault.

Stephen Males, Portsmouth, NH, Paul Haley, Hillsborough, NH, for Realty Funding Corp.

Larry Sumski, Trustee, Amherst, NH.

### MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

Maryrose Arsenault, the debtor in this case, filed this adversary proceeding to void the second mortgage loan owed to the defendant due to violation of various New Hampshire consumer protection statutes. The Court ruled on some of the issues on cross motions for summary judgment (Court Doc. No. 20) and the remaining issues after a one day trial. (Court Doc. No. 24). At the conclusion of the trial, the Court made its findings of facts and rulings of law which are hereby incorporated by reference.

To briefly summarize, in September, 1988 Maryrose Arsenault, the debtor and plaintiff in this case contacted Mansfield Mortgage Company for the purpose of refinancing a $16,679.11 second mortgage on her home then held by United Savings Bank. Mansfield Mortgage denied Ms. Arsenault's application and referred her to Realty Funding Corp. who did agree to refinance her loan. On October 5, 1988, the plaintiff signed a three year promissory Note for $32,000. Under the terms of the Note, the plaintiff was to remit monthly payments of interest only for 35 months commencing on December 1, 1988 and one final payment of the outstanding principal and interest on November 1, 1991. Realty Funding's monthly interest only payments were at a variable rate between 18 percent and 36 percent for a term of three years. At the end of the three years a balloon payment of the original principal amount was due. Based on the record and findings previously made by this Court regarding the terms of this transaction and the circumstances surrounding the loan, the Court found the defendant willfully violated the provisions of N.H.Rev.St.Ann. § 358–K:3 (prohibiting advance collection of interest) and violated the provisions of N.H.Rev.St. Ann. § 398–A:2 II (limitation on the "charges" that may be collected upon default)

although the latter was found "not a willful violation in that the requirements of the statute are not clear on its face and there is little or no case law interpreting the language." (Ct.Doc. No. 24, at 2).

At the conclusion of the trial, the Court ordered the parties to submit memorandums regarding the calculation of damages for the violations under the applicable statutory provisions. On January 26, 1995, after receipt of the memorandums, determination of the amount of damages was taken under advisement.

### THE STATUTES

The statutory provisions in question will be set forth in some detail below since they are crucial to the appropriate determination of damages for the violations in question. Their general context however needs to be set forth first.

RSA § 358–K:3 appears in Chapter 358–K of the New Hampshire Revised Statutes entitled "Regulation of Consumer Credit Transactions" and § 358–K:6 makes applicable the provisions of that Chapter to all consumer credit transactions both secured and unsecured including those secured by a real property mortgage. The transaction in the present litigation with this defendant falls within the applicability of this Chapter.

RSA 398–A:2 "Interest and Interest Rates" appears in Chapter 398–A of the New Hampshire Revised Statutes entitled "Second Mortgage Home Loans" and provides the basic limitation on interest and interest rates permissible under New Hampshire law. It also provides explicitly in § 398–A:7 for the appropriate treatment of illegal loans under this Chapter. The transaction in the present litigation and this defendant come within the applicability of this Chapter.

RSA 358–A:2 is also implicated in the present case. That statute deals generally with unfair or deceptive acts or unfair methods of competition and appears in Chapter 358–A of the New Hampshire Revised Statutes entitled "Regulation of Business Practices For Consumer Protection" and provides in

§ 358–A:10 for private actions resulting from violations of this Chapter.

We now turn to the specific statutory provisions in question, as they existed on the date of the subject transaction, and the particular legal issues presented in this case.

*N.H.Rev.St.Ann. § 358–K:3*

The issue before the Court under this statute is whether the defendant's willful violation of N.H.Rev.St.Ann. § 358–K:3 should result in either (1) a voiding of the entire contract in terms of its interest provisions, or (2) a voiding of only the illegal "advance interest" portion of the contract. The relevant statutory provisions read as follows:

358–K:3: **Advance Collection of Interest in Consumer Credit Transactions Prohibited After June 30, 1985.**

Notwithstanding any other law to the contrary, with respect to closed-end consumer credit transactions entered into after June 30, 1985, interest shall be collected only as earned, and no interest on such transactions shall be paid, deducted or added to principal in advance. This section shall not preclude the advance collection or prepayment of other charges to which the transaction is subject. This section shall not apply to the advance collection of interest at the inception of a closed-end consumer credit transaction for origination fees or for a fractional part of a month in order to achieve a common or convenient monthly payment date as provided by RSA 358–K:4–a.

358–K:5: **Penalty.**

Any person who willfully violates any provision of this chapter shall be guilty of a misdemeanor.

358–K:6: **Application of Chapter to Types of Transactions.**

The provisions of this chapter shall apply to all consumer credit transactions, both secured and unsecured, including those transactions secured by a real property mortgage.

*N.H.Rev.St.Ann. § 398–A:2*

The issue before the Court under this statute is the remedy for the defendant's nonwillful violation of N.H.Rev.St.Ann. § 398–A:2. The relevant statutory provisions under 398–A read as follows:

398–A:2 **(I & II) Interest and Interest Rates.**

I. The allowable rate of interest computed on the unpaid balance that any person may directly or indirectly charge, take or receive for a second mortgage loan secured by property which is occupied in whole or in part at the time said loan is made as a home by any obligor on the mortgage debt or by any person granting or releasing any interest under said mortgage shall be the rate agreed upon in the note between borrower and lender; and following the sixth month of any period in which a loan has been in continuous default not more than 1½ percent per month on any unpaid balances. [Amended 1985, 397:7. 1987, 339:8, eff. Jan. 1, 1988.]

II. Notwithstanding any other provisions of this chapter the charges which may be collected on any loan made under this chapter for the period beginning 6 months after the originally scheduled final installment date of a loan other than an open-end loan, or for the period beginning 6 months after the final due date of an open-end loan as established by the term applicable to the loan from time to time in accordance with the open-end note or loan agreement and ending with date of payment of the loan in full shall not exceed 18 percent per annum simple interest on the balances outstanding from time to time during said period. If the loan is an open-end loan the borrower's privilege for further loans shall not be reinstated by the licensee where the rate has been reduced under the preceding sentence unless the borrower executes a new open-end loan agreement.

398–A:7 **Illegal Loans.**

Any loan made in violation of RSA 398–A:2 by any person shall be discharged upon payment or tender by the debtor or any person succeeding to his interest in such real estate of the principal sum actually borrowed. Any agreement whereby the borrower waives the benefits of RSA 398–A:2 or releases any rights he may have acquired by virtue thereof shall be deemed against public policy and void. The superior court shall have jurisdiction of all suits

arising under RSA 398–A:2 and if a finding is made that such loan secured by any such mortgage violates said section such borrower shall be entitled as a part of his costs to a reasonable fee for the services of his attorney in such suit.

**398–A:7–a Penalty.**

Any person who willfully violates any provision of this chapter shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person, for each such violation.

*N.H.Rev.St.Ann. § 358–A:2*

The issue before the court under the Consumer Protection provisions of Chapter 358–A is whether the violations of the other statutory provisions should also be determined to be a violation of this statutory proscription as well. A violation under Chapter 358–A can lead to enhanced doubling or trebling of damages as well as specific provision for allowance of attorneys' fees and costs. A secondary issue is whether *independently* of the fact of proven violation of other statutory provisions by the defendant *the conduct* of the defendant involved in the present litigation should be determined to constitute a violation of § 358–A:2 directly. The relevant statutory provisions under Chapter 358–A are as follows:

**358–A:2 Acts Unlawful.**

It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following:

I. Passing off goods or services as those of another;

II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

IV. Using deceptive representations or designations of geographic origin in connection with goods or services;

V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

VI. Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or second-hand;

VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

VIII. Disparaging the goods, services, or business of another by false or misleading representation of fact;

IX. Advertising goods or services with intent not to sell them as advertised;

X. Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

XI. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

XII. Conducting going out of business sales other than the name implies, or which last more than 60 days, or which are held more than once every 2 years by the same owner of the business.

**358–A:6 Penalties.**

I. Any person convicted of violating RSA 358–A:2 hereof shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person.

II. Any person who violates the terms of an injunction issued under RSA 358–A:4, III, shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person. For the purposes of this section, the court issuing said injunction shall retain jurisdiction.

III. Any person who subverts the intent and purposes of this chapter by filing false, misleading, or substantially inaccurate statements with the attorney general for the purposes of effecting prosecution under this chapter shall be guilty of a violation.

IV. If any person is found to have engaged in any act or practice declared unlawful by this chapter, the court may award to the state in any action brought under this chapter all legal costs and expenses. RSA 525:12 shall apply to civil actions commenced under this chapter.

**358–A:10 Private Actions.**

I. Any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper. If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $200, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount. In addition, a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court. Any attempted waiver of the right to the damages set forth in this paragraph shall be void and unenforceable.

II. Upon commencement of any action brought under this section, the clerk of the court shall mail a copy of the complaint or other initial pleadings to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general.

## THE CONFLICTING CONTENTIONS

The plaintiff argues that the illegality of the interest provisions of the contract in question should result in a finding that the contract is unenforceable except with regard to repayment of the principal advanced by the defendant. More specifically, the plaintiff in her memorandum (Court Doc. No. 23) provides an analysis of allowable and varied charges in tabular form as follows:

**Analysis of Benefits Conferred Upon Debtor under the Void Contract Which Should be Tendered or Paid to Realty Funding Under the Chapter 13 Plan.**

| Charge or Disbursement | Amount | Void | Allowed |
|---|---|---|---|
| **Closing Cost On Original Loan** | | | |
| Legal Fee to Mark Harmon | 700.00 | 700.00 | |
| Recording Costs | 34.50 | | 34.50 |
| Postage & Xerox | 35.00 | | 35.00 |
| Five Points Interest on Loan | 1,600.00 | 1,600.00 | |
| Prepaid Interest to 10/31/88 | 320.00 | 320.00 | |
| Bring 1st Mortgage Current | 1,866.14 | | 1,866.14 |
| Payoff 2nd Mortgage | 16,679.11 | | 16,679.11 |
| Derry RE Taxes 1988 | 1,419.83 | | 1,419.83 |
| 1st 12 Loan Payments Escrowed | 5,760.00 | | 5,760.00 |
| Title Certification & Title Ins. | 199.00 | | 199.00 |
| Brokerage Fee to Mansfield Mtge. | 2,240.00 | | 2,240.00 |
| Net to Borrower | 1,146.42 | | 1,146.42 |
| **Servicing Costs** | | | |
| Derry RE Taxes 88 & 89 | 5,258.10 | | 5,258.10 |
| Homeowner's Insurance | 209.70 | | 209.70 |
| UPS | 9.00 | | 9.00 |
| Derry RE Taxes 1990 | 1,476.02 | | 1,476.02 |
| Tamposi & Bouchard | 512.60 | 512.60 | |
| Stephen Males, Esq. | 1,849.50 | 1,849.50 | |
| UPS | 9.00 | 9.00 | |
| Gatsas Appraisal | 100.00 | 100.00 | |
| Stephen Males, Esq. | 3,659.00 | 3,659.00 | |
| Stephen Males, Esq. | 588.00 | 588.00 | |
| Stephen Males, Esq. | 330.00 | 330.00 | |
| Stephen Males, Esq. | 2,175.00 | 2,175.00 | |
| Paul J. Haley, Esq. | 1,175.00 | 1,175.00 | |

| Charge or Disbursement | Amount | Void | Allowed |
|---|---|---|---|
| Interest | | | |
| Int 11/1/88–5/30/93 | 30,579.13 | 30,579.13 | |
| Int 06/01/93–12/19/94 | 9,620.66 | 9,620.66 | |
| **TOTAL** | **89,550.71** | **55,457.89** | **34,092.82** |

Under this analysis the plaintiff contends that since she paid $30,579.13 in pure interest payments over the life of the loan she entitled to a credit in that amount against the actual benefits received which total $34,092.82. Accordingly the plaintiff argues that the Court should find that the debtor owes the defendant the difference, or $3,513.69 to be paid pursuant to a chapter 13 plan, before application of any credit for damages that might be awarded for the statutory violations.

The defendant for its part contends that the contract should only be adjusted to delete the illegal "advance interest" and the other violative interest features and their effects throughout the loan. The defendant's analysis appears in tabular form in its memorandum (Court Doc. No. 25) as follows:

**Defendant adjusts the original loan amount of $32,000.00 to $25,500, calculated as follows:**

| | |
|---|---|
| Original loan amount | $32,000.00 |
| Less: | |
| Escrow amount | 5,760.00 |
| Five points assessed for escrow amount | 288.00 |
| Brokerage fee (7%) | 403.20 |
| Adjusted original loan amount | $25,548.80 |
| Rounded principal balance | $25,500.00 |

5. To the adjusted rounded principal balance, defendant is entitled to the following additions:

| | |
|---|---|
| Rounded principal balance | $25,500.00 |
| Plus INTEREST | 33,002.93 |
| Monthly interest owed on 12/19/94 | + 33,002.93 |

PAYMENTS MADE BY DEFENDANT ON PLAINTIFF'S BEHALF

| | | |
|---|---|---|
| First year's interest payments | | 5,990.14 |
| 2/9/90 | Town of Derry real estate taxes | 5,258.10 |
| 3/29/90 | Continental Insurance | 209.70 |
| 3/29/93 | UPS | 9.00 |
| 5/12/93 | Town of Derry real estate taxes | 1,476.02 |
| | TOTAL PAYMENTS FOR PLAINTIFF | + 12,942.96 |

DEFENDANT'S COSTS RELATIVE TO DEBT COLLECTION

| | | |
|---|---|---|
| 11/08/93 | Tamposi & Bouchard | 512.60 |
| 11/29/93 | Stephen Males, Esquire | 1,849.50 |
| 12/16/93 | UPS | 9.00 |
| 2/18/94 | Gatsas Appraisal | 100.00 |
| 2/18/94 | Stephen Males, Esq. | 3,659.00 |
| 3/21/94 | Stephen Males, Esq. | 588.00 |
| 4/29/94 | Stephen Males, Esq. | 330.00 |
| 6/10/94 | Stephen Males, Esq. | 2,175.00 |

DEFENDANT'S COSTS RELATIVE TO DEBT COLLECTION

| | | |
|---|---|---|
| 11/04/94 | Paul J. Haley, Esq. | 1,175.00 |
| 12/29/94 | Paul J. Haley, Esq. | 2,475.00 |
| | TOTAL COLLECTION COSTS | + 12,873.10 |
| SUBTOTAL | | $84,318.99 |
| | | |
| Less: Interest Paid by plaintiff | | − 30,579.13 |
| Balance due defendant | | $53,739.86 |

The defendant therefore contends that it is entitled to judgment in the amount of $53,739.86. The defendant makes no mention in its Memorandum regarding damages for the statutory violations and/or enhanced damages, attorneys fees, and costs, if a violation of Chapter 358–A is also determined by this Court.

The debtor does spell out her claim for damages in her Memorandum claiming a statutory penalty under RSA § 358–A:10 for 36 separate violations that the debtor contends occurred on each month between December 3, 1990 and May 20, 1993, as well as on July 12, 1993, since the debtor argues the defendant actually collected interest payments from the debtor on those occasions which were based, in part, on a principal balance improperly inflated and therefore the debtor argues that each monthly interest collected was necessarily excessive.[1]

The debtor notes that the total of 36 separate violations would justify a damage award of at least $7,200 (at the $200 per violation penalty) and that a finding of a willful or knowing violation of Chapter 358–A of the New Hampshire Revised Statutes would permit the Court under RSA § 358–A:10 to double or treble this amount.[2] The debtor finally claims entitlement to reasonable attorneys fees and costs "pursuant to NH RSA 398–A:7, NH RSA 361–C, NH RSA 358–C:4, and NH RSA 358–A:10."

*DISCUSSION*

The primary legal question raised by the facts of this case is whether the defendant will suffer forfeiture of all interest on the loan in question or only that portion of the interest provided in the loan contract which has been determined to be illegal and in violation of the pertinent statutory provisions.

 With regard to the violation of RSA § 398–A:2 the answer to this primary question is clear since § 398–A:7 explicitly provides that a borrower subjected to an illegal loan under this statutory provision may satisfy the loan in question by tendering the principal only to the lender. Moreover, the fact that the separate statutory provision of § 358–K:3 violated by this defendant is not accompanied by a comparable provision in Chapter 358–K, dealing explicitly with loan repayment, does not necessarily absolve the defendant from a like result from that statutory violation as well.

The case law in New Hampshire has long evidenced a dim view taken toward parties seeking to enforce contractual provisions under a contract found to have violated a statutory prohibition. As early as 1843 the New Hampshire Supreme Court in *Allen v. Deming,* 14 N.H. 133, 138 (1843) stated:

A party should not be heard before a tribunal whose duty it is to declare the law, when his cause of action arises from a transgression of the law. The principle has been applied to the sale of lottery tickets, *Hunt vs. Knickerbacker, 5 Johns.* 327; to a promissory note for the price of shingles under the statutory dimensions, *Wheeler vs. Russell,* 17 Mass. 258; to a sale of wood by the cord, not measured by a wood measurer, *Pray vs. Burbank,* 10 N.H.Rep. 377; and to many other cases. *Fales vs. Mayberry,* 2 Gall 560 [8 F.Cas.

1. The debtor also contends alternatively that damages could be calculated at $200 per violation pursuant to RSA § 358–C:4 but this Court has found no violation of that specific Chapter of the New Hampshire Revised Statutes.

2. The plaintiff again contends alternatively for enhanced damages under Chapter 358–C of the statutes but again this Court has found no violation of that specific Chapter.

970]; *Laws vs. Hodson,* 11 East 300; *Parkin vs. Dick,* 11 East 502.

The New Hampshire Court reinforced this principle in *Boutelle v. Melendy,* 19 N.H. 196, 197 (1848) stating:

> The sale was illegal; and it is well settled that such contracts shall receive no judicial sanction; that the law will recognize no validity, in favor of a wrong-doer in an act which it prohibits and punishes. To permit its subsequent ratification, or to consider it the sufficient and legal basis of a subsequent promise, would be a manifest inconsistency. It would be to annul the rule, and enable the parties, by an easy expedient, to evade laws based upon considerations of public policy. See *Allen v. Deming,* 14 N.H.Rep. 133.

In the case of *Karamanou v. H.V. Greene Co.,* 80 N.H. 420, 124 A. 373 (1922), a case in which the Court affirmed the granting of relief to a buyer of securities for the purchase price, without any showing of value or proof of loss, where the seller sold without a license required by statute, the Supreme Court commented (at page 423, 124 A. 373) as follows:

> . . . "[W]here contracts or transactions are prohibited by positive statutes, for the sake of protecting one set of men from another set of men; the one from their situation and condition, being liable to be oppressed or imposed upon by the other; *there,* the parties are *not in pari delicto;* and in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract." *Lord Mansfield, Browning v. Morris,* 2 Cowp. 790, quoted in *Edgerly v. Hale,* 71 N.H. 138, 147 [51 A. 679]. The statute under consideration was passed for the protection of men such as the plaintiff. The sale only is penalized, not the purchase. If the plaintiff has paid money or other thing to the defendant under the prohibited contract, the defendant cannot set up a title to such money or thing under the contract made in violation of law and the plaintiff will be entitled to recover without proof of the defendant's

bad faith or the lack of value in the securities if he returns them. *Edgerly v. Hale,* 71 N.H. 138, 147, 148 [51 A. 679]; *Edward v. Ioor,* 205 Mich. 617 [172 N.W. 620], 15 A.L.R. 256.

These early New Hampshire cases, as well as a succeeding line of similar case decisions in New Hampshire, were examined by the Court of Appeals for the First Circuit in *Doherty v. Bartlett,* 83 F.2d 259 (1936) noting (at pages 260–261) the following:

> In New Hampshire from the earliest time contracts or acts entering into contracts prohibited by statute subject to penalty have been uniformly held to be void, not voidable (*Allen v. Deming,* 14 N.H. 133, 40 Am.Dec. 179; *Boutelle v. Melendy,* 19 N.H. 196, 49 Am.Dec. 152; *State v. Rand,* 51 N.H. 361, 12 Am.Rep. 127; *Albertson & Co. v. Shenton,* 78 N.H. 216, 98 A. 516; *Edgerly v. Hale,* 71 N.H. 138, 51 A. 679; *George v. George,* 47 N.H. 27, and numerous other cases); whereas, in Massachusetts they frequently have been held voidable, if not executed, not void.

More recently, the New Hampshire Supreme Court has indicated some softening of its earlier rigid position of refusing to enforce any provision of a contract found to be violative of a specific statutory proscription, as indicated in the decision of *American Home Improvement Inc. v. MacIver,* 105 N.H. 435, 201 A.2d 886 (1964). In that case the plaintiff had entered into a home improvement contract for work on the defendant's residence and had separately entered into a financing contract, to cover the job, which was determined to be in violation of RSA § 399–B in that the rate of interest or finance charges under the loan contract were not clearly stated as required by the statute. The defendant breached the contract before much work was done on his residence but after the plaintiff had paid an $800 commission to the salesman who had obtained the home improvement contract. The plaintiff was denied any relief for the breach of the contract by the defendant even though it was determined that the plaintiff's violation of § 399–B was not willful.

In affirming the result in the *American Home Improvement* case, the New Hampshire Supreme Court reexamined the "illegality factor" as to contractual enforceability and commented (at page 438, 201 A.2d 886) as follows:

The parties have agreed that the plaintiff did not willfully violate the disclosure statute and this eliminates any consideration of RSA 399–B:4 (supp) which provides a criminal penalty of a fine of not more than five hundred dollars or imprisonment not more than sixty days, or both. This brings us to the second question whether the agreement is "void so as to prevent the plaintiff from recovering for its breach."

"At first thought it is sometimes supposed that an illegal bargain is necessarily void of legal effect, and that an 'illegal contract' is self-contradictory. How can the illegal be also legal? 'The matter is not so simple.' 6 A Corbin, Contracts, s. 1373 (1962). The law is not always black or white and it is in the flexibility of the gray areas that justice can be done by a consideration of the type of illegality, the statutory purpose and the circumstances of the particular case. 'It is commonly said that illegal bargains are void. This statement, however, is clearly not strictly accurate.' 5 Williston, Contracts (Rev. *ed.* 1937) s. 1630. The same thought is well summarized in 6 A Corbin, Contracts, s. 1512 (1962): 'It has often been said that an agreement for the doing of that which is forbidden by statute is itself illegal and necessarily unenforceable. This is an unsafe generalization, although most such agreements are unenforceable.' This section was cited in the recent case of [*William* ] *Coltin [&] Company v. Manchester Savings Bank,* 105 N.H. 254 [197 A.2d 208], holding unenforceable a contract for a broker's commission for the sale of real estate without a license in·violation of a statute.

In examining the exhibits and agreed facts in this case we find that to settle the principal debt of $1,759 the defendants signed instruments obligating them to pay $42.81 for 60 months, making a total payment of $2,568.60, or an increase of $809.60 over the contract price. In reliance upon the total payment the defendants were to make, the plaintiff pay a sales commission of $800.

\* \* \* \* \* \*

In the circumstances of the present case we conclude that the purpose of the disclosure statute will be implemented by denying recovery to the plaintiff on its contract and granting the defendants' motion to dismiss. [*Burque v. Brodeur,*] 85 N.H. 310, 158 A. 127; *Park v. Manchester,* 96 N.H. 331 [76 A.2d 514]; *Albertson & Co. v. Shenton,* 78 N.H. 216 [98 A. 516].

The new standard enunciated in the *American Home Improvement* case was picked up and restated in *Decato Brothers, Inc. v. Westinghouse Credit Corp.,* 129 N.H. 504, 529 A.2d 952 (1987), in another case involving a violation of full disclosure of interest rates under RSA Chapter 399–B. In this case the Court ultimately held that the loan contract *was* enforceable although the decision to a large extent was based upon the fact that there had been an explicit accord and satisfaction agreement between the parties before the question of statutory violation was ever raised by the borrower.

The Court in the *Decato Brothers'* case restated the applicable standard in this context (at pp. 509–510, 529 A.2d 952) as follows:

We next must consider whether the defendant's non-compliance with the disclosure statute renders the contract automatically void, to deprive the defendant of the benefit of its bargain. The question is whether the facts in this case justify our going beyond the criminal sanction of the statute to require the defendant to forfeit its right to payment for the time value of the money it loaned the plaintiff, along with the prepayment penalty.

We note that we are dealing with a technical violation of the statute. This court has held that the fact that a credit transaction runs afoul of chapter 399–B does not necessarily render it void for all purposes. *First Fed. Savings & Loan Ass'n v. LeClair,* 109 N.H. 339, 341, 253

A.2d 46, 48 (1969). As Chief Justice Kenison noted in *American Home Improvement*, 105 N.H. at 438, 201 A.2d at 888, "[t]he law is not always black or white and it is in the flexibility of the gray areas that justice can be done by a consideration of the type of illegality, the statutory purpose and the circumstances of the particular case."

The violation here is punishable as a misdemeanor. Violation of statutes aimed at deterring sharp loaning practices should not be condoned. To decide whether a consequence beyond the one prescribed by the statute should attach, however, we must consider all the circumstances, including:

> "what was the nature of the subject matter of the contract; what was the extent of the illegal behavior; was that behavior a material or only an incidental part of the performance of the contract ... what was the strength of the public policy underlying the prohibition; how far would effectuation of the policy be defeated by denial of an added sanction; how serious or deserved would be the forfeiture suffered by the plaintiff, how gross or undeserved the defendant's windfall."

*Town Planning & Eng'r Assocs. Inc. v. Amesbury Specialty Co., Inc.*, 369 Mass. 737, 745–46, 342 N.E.2d 706, 711 (1976). Without engaging in a protracted analysis, we hold that in this case the vector of considerations points in the defendant's favor. Courts should not go out of their way to visit hardship upon parties beyond that which is necessary to uphold the policy of the law. *Nussenbaum v. Chambers & Chambers, Inc.*, 322 Mass. 419, 422, 77 N.E.2d 780, 782 (1948). In this case, the statutory violation is not so repugnant as to entitle the plaintiff to a gift of the defendant's services, namely the free use of a large amount of money for a substantial period of time. As Professor Corbin has noted in the context of licensing statutes:

> "[I]n very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, [and] his non-compliance with the statute seems nearly harmless.... Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating [parties]."

6A A.L. *Corbin, Corbin on Contracts* 1512 at 713 (1962). We find this reasoning applies in the present context, and hold that the exchange notes in this case were properly the subject of an accord and satisfaction between the parties.

### CONCLUSION

 Under the foregoing New Hampshire authorities it is my conclusion that the violation of RSA § 358–K:3 found by this Court to have been willful on the part of the defendant should be determined to be no mere "technical" violation of the statute in question but rather a violation of an important public policy intended to protect unskilled and unlearned consumer borrowers from oppressive overreaching by lenders sophisticated enough to use an excessive interest scheme whose vice is not readily apparent to the average consumer. That being the case, I believe it would be a travesty to allow the lender in that context to escape any substantial penalty by simply offering to refund the excessive interest charged. Such a result would not deter lenders using that device from repeated violations of the statute since they would still remain assured of recovering interest for the use of his money at the legal rate. I believe something more is required to "get the attention" of such lenders in the manner necessary to implement the public policy embodied in the legislation in question. That "something more" I conclude is to refuse to enforce the loan contract provisions with regard to any amount of interest therein provided.

 The violation of RSA § 398–A:2 found by this Court might be viewed closer to the "technical violation" category under the *De-*

*cato* analysis, inasmuch as the Court has determined that this violation was not willful due to the complexity of the statutory language involved, but the problem for the defendant with regard to this violation is that this statutory provision occurs in a Chapter in which it is explicitly provided under RSA § 398–A:7 that borrowers suffering a violation by illegal loans under Chapter 398–A may satisfy the loan in question by tendering the principal amount only. Moreover, there is no requirement for a finding of willfulness in that context. Accordingly, I conclude that the defendant should not be allowed to recover any interest with regard to the loan in question on the separate ground of violation of RSA 398–A:2 as determined by this Court.

The final question for determination is whether this Court should find and conclude that the statutory violations found by this Court to have occurred should also be determined to constitute a violation of RSA § 358–A:2 which involves the use of an unfair method of competition or an unfair or deceptive act or practice by the defendant in the conduct of his trade or commerce within this state. It is noted that Chapters 358–K and 398–A of the New Hampshire Revised Statutes do not explicitly provide that a remedy under Chapter 358–A is also available for a violation, although other consumer protection statutes in New Hampshire do provide explicitly for such an additional remedy.

It has recently been held in *Chroniak v. Golden Investment,* 983 F.2d 1140 (1st Cir. 1993), applying New Hampshire law, that such an explicit remedy provision is not necessary to the availability of the additional remedies under Chapter 358–A if the situation otherwise warrants such remedies. As noted in *Chroniak* the conclusion is inescapable: "If conduct that is not proscribed by any statute may be found 'unfair' under CPA, § 2, conduct squarely within the proscriptive penumbra of a consumer protection statute surely satisfies the 'unfairness' requirement." (983 F.2d at 1146).

 Accordingly, I find and conclude that the defendant's conduct in violating the specific statutory provisions determined by this Court also constitutes an unfair or deceptive act or practice in violation of RSA § 358–A:2. That being the case, the Court determines that the plaintiff shall have damages pursuant to RSA § 358–A:10 in the amount of $200.00 for each of the 36 separate violations or a total of $7,200.00 in statutory damages. The Court determines, however, no doubling or trebling of the statutory damages is warranted in the present case, in view of my conclusion above denying the defendant any collection of interest on the loan in question.

A separate order shall issue pursuant to this opinion providing for judgment in favor of the plaintiff in the net amount of $3,686.31 (damages of $7,200.00 less credit for $3,513.69 of unpaid principal) and determining that the lien upon the plaintiff's property shall be deemed satisfied and shall be removed from the public records.

The Court defers any ruling with regard to claim to attorney's fees by the plaintiff but will retain jurisdiction in that regard for separate proceedings following entry of judgment in this matter as may be appropriate.